UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL AARON WITKIN,<br><br>Plaintiff,<br><br>v.<br><br>D. WAGNER, et al.,<br><br>Defendants. | No.  2:20-cv-00267-WBS-CKD P<br><br>ORDER AND<br><br>FINDINGS AND RECOMMENDATIONS |

    Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.  This action is proceeding on plaintiff's first amended complaint alleging that defendants Wagner and Hagerman retaliated against him in violation of the First Amendment.  ECF No. 15.  Currently pending before the court are plaintiff's motions for leave to file a third amended complaant, to reopen discovery, and to extend the time to file a dispositive motion.  ECF Nos. 50, 52-53.  Defendants filed an opposition to plaintiff's motion to reopen discovery.  ECF No. 55.  Notwithstanding plaintiff's pending motions, the parties also filed cross-motions for summary judgment which have been fully briefed.  ECF Nos. 56-60,  65, 66.  The court will address the pending motions in the order that they were filed.  For the reasons explained below, the court will deny plaintiff's motions to further amend his complaint and to reopen discovery.  The undersigned further recommends granting defendants' motion for summary judgment and denying plaintiff's cross motion for summary judgment.

1

I.      **Procedural History**

On September 20, 2021, the court denied plaintiff's motion for leave to file a second amended complaint because the proposed claims against defendants Wise, Kelly, Voong, Neuschmid, and Briggs were futile having already been dismissed without further leave to amend. See ECF No. 44 at 3. The court also denied leave to amend to add supplemental state law claims against defendants Wagner and Hagerman based on plaintiff's undue delay and prejudice to the defendants because discovery had already closed. Plaintiff's motion to reconsider these rulings was denied by the district court judge on October 28, 2021. See ECF No. 54.

II.     **Plaintiff's Motion for Leave to Amend**

A month before the dispositive motions deadline, plaintiff filed a motion for leave to file a third amended complaint, a proposed amended complaint, and a motion to reopen discovery. ECF Nos. 50-52. In his motion to amend, plaintiff seeks leave to raise a First Amendment retaliation claim and state law negligence claims against defendants Wise, Kelly, Voong, Neuschmid, Briggs, and Does 1-5. ECF Nos. 50, 51. Plaintiff also complains that the court erroneously denied his prior motion to amend, even though his reconsideration of that motion was denied by the district court judge.

Plaintiff's motion ignores the court's prior orders in this matter. Defendants Wise, Kelly, Voong, Neuschmid, and Briggs were dismissed from this action without further leave to amend on January 27, 2021. ECF No. 26. Moreover, the court has already denied plaintiff's motion for leave to file a second amended complaint and plaintiff's motion to reconsider that order has also been denied. See ECF Nos. 44, 54. For the reasons explained in the court's prior orders, plaintiff's motion for leave to file a third amended complaint is denied.

III.    **Plaintiff's Motion to Reopen Discovery**

On October 8, 2021, plaintiff filed a motion to reopen discovery because the "time allocated for discovery was inadequate." ECF No. 52 at 1. Plaintiff seeks an order requiring defendants to respond to his August 8, 2021 interrogatories and requests for production of documents, but he does not attach them. ECF No. 52 at 4. Instead, plaintiff states that these discovery responses may be able to assist him in moving for summary judgment. Id. Plaintiff

2

himself points out that he was able to timely serve two complete sets of written discovery requests in the time provided by the court's Discovery and Scheduling Order. ECF No. 52 at 5.

Defendants filed an opposition to plaintiff's motion to reopen discovery. ECF No. 55. First, defendants assert that plaintiff's motion merely rehashes his prior motion to modify the discovery and scheduling order which the court denied. ECF No. 55 at 1. Moreover, the district court judge assigned to this case denied plaintiff's motion to reconsider that order. See ECF No. 54. Defendants point out that the current motion does not offer any explanation for plaintiff's delay in propounding his second set of discovery requests. ECF No. 55 at 4-5. Defendants assert that they would be prejudiced by reopening discovery at this late stage of the proceedings. ECF No. 55 at 5. Allowing plaintiff to relitigate discovery disputes "would erode the finality of orders for issues that have already been litigated…." Id. at 5.

Based on this court's prior finding that plaintiff was not diligent in propounding the second set of discovery requests, there is no legal basis upon which the court can reopen discovery. See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992) (emphasizing that "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."). Even construed as a motion to defer consideration of the pending summary judgment motion, plaintiff does not explain what information he requires via discovery that is essential for his opposition to such motion. See Fed. R. Civ. P. 56(d). Plaintiff hypothesizes that the second set of discovery responses "may" help him file a cross motion for summary judgment. ECF No. 52 at 4. However, plaintiff's motion does not demonstrate any essential facts that are unavailable to him to properly oppose a motion for summary judgment. Therefore, plaintiff's motion to reopen discovery is denied.

To the extent that plaintiff filed a separate motion to extend the deadline for filing a dispositive motion, ECF No. 53, this motion is denied as moot based on plaintiff's subsequently filed motion for summary judgment.

**IV.     Allegations in the First Amended Complaint**

At all times relevant to the allegations in the amended complaint, plaintiff was an inmate at California State Prison-Solano ("CSP-SOL"). On May 10, 2019, several days prior to a

3

scheduled hearing in the Sacramento County Superior Court, plaintiff was sent to the Receiving & Release section of CSP-SOL to "transpack" his property. ECF No. 14 at 3. Plaintiff "spent over an hour organizing and packing up a convenient amount of his personal property… the balance… [of which] he left in his locker." Id. at 3. Before leaving the prison on May 14, 2019, plaintiff "secured his personal property in the locker with his state issued lock." Id. After plaintiff left, defendant Wagner removed plaintiff's personal property and threw it in the "hot trash." Id.

Upon plaintiff's return to CSP-SOL on May 21, 2019, defendant Hagerman interviewed plaintiff. Plaintiff informed defendant Hagerman that he had a job assigned to him in Building 14 that he would like to return to. However, based on his protected use of the state court system to file lawsuits, defendant Hagerman terminated plaintiff's work assignment and transferred him to Facility D. ECF No. 14 at 5. After speaking to staff on Facility D, plaintiff was transferred back to Facility C by 8:00 pm on the day of his return to CSP-SOL.

Plaintiff alleges that defendants' actions chilled his First Amendment rights and that they did not advance a legitimate correctional goal.

V.    **Material Facts**[1]

**A. Plaintiff's Transpacking of His Property**

At all times relevant to the allegations in the complaint, plaintiff was housed at CSP-SOL in Facility C, Building 14. Defendants' Statement of Undisputed Facts (hereinafter "DSUF") at 1. Defendants Wagner and Hagerman were employed by the California Department of Corrections and Rehabilitation ("CDCR") as custody staff at CSP-SOL. DSUF at 2. According to CDCR and CSP-SOL policies, inmates who are being transported out to court and are not returning on the same day are required to take all of their personal property to the receiving and release ("R&R") area where it will be inventoried and stored until their return from court. DSUF at 5. This process is referred to as "transpacking." DSUF at 5.

Once an inmate is transported out to court, CDCR policy further requires that officers

---

[1] All facts are undisputed unless otherwise indicated.

search his previously assigned bunk area and confiscate all property that was left behind so that another inmate can be assigned to that bunk. DSUF at 6. This prevents an inmate who later occupies that bunk from claiming that any subsequently-located contraband or other dangerous items were already there upon their arrival. DSUF at 7.

On May 10, 2019, plaintiff was sent to transpack his property before he was transported out of CSP-SOL on May 14, 2019 for an appearance in the Sacramento County Superior Court three days later for a motion to reduce his sentence. DSUF at 8; ECF No. 57-2 at 6 (Plaintiff's Statement of Undisputed Facts at 36). Plaintiff had been transported out to court on prior occasions, was familiar with the process of transpacking, and had transpacked his property on previous occasions. DSUF at 9. On this occasion, plaintiff brought some of his personal property to R&R, but he left other items in his assigned bunk area, despite knowing that he would be gone for more than a day. DSUF at 10.

After plaintiff was transported out of CSP-SOL, defendant Wagner conducted a search of plaintiff's vacated bunk area and confiscated the property that plaintiff had left behind. DSUF at 12. Defendant Wager asserts that his actions conformed to CDCR policy and his regular practice. ECF No. 56-4 at ¶ 9 (Declaration of D. Wagner). Plaintiff argues that this actually violated "at least 7 CDCR policies." ECF No. 58 at 4. Defendant Wagner did not directly dispose of the property plaintiff had left in his previous bunk. DSUF at 13. Plaintiff did not return to CSP-SOL until May 21, 2019, after having been out to court for a period of seven days. DSUF at 11. Upon his return, plaintiff asked for his property back from defendant Wagner who tried to locate it, but could not find it. DSUF at 13.

**B. Plaintiff's Return to CSP-Solano**

Each inmate who returns to CSP-Solano from being out to court is interviewed by the R&R sergeant who is responsible for completing an initial housing review form that documents the inmate's housing factors and restrictions. DSUF at 14. According to defendant Hagerman, the R&R sergeant does not determine specific building or bed assignments for incoming inmates. DSUF at 15. Instead, the R&R sergeant sends a list of the incoming inmates to the Facility C sergeant who is responsible for determining bed availability and suitability for both Facility C and

Facility D at CSP-Solano. DSUF at 15. The R&R sergeant is then informed of the specific assignments for the incoming inmates. DSUF at 15. CDCR inmates are not permitted to pick specific housing assignments. DSUF at 16. Instead, inmates must he housed according to a number of factors including institutional needs, available bed space, and the safety and security of staff and inmates at CSP-Solano. DSUF at 16. Plaintiff points out that an additional factor that is considered is an inmate's previous housing status. ECF No. 57-3 at 14 (Defendant Hagerman's Response to Request for Admission No. 5).

When plaintiff returned to CSP-Solano on May 21, 2019, he was interviewed by defendant Hagerman for his initial housing review. DSUF at 17. Defendant Hagerman completed plaintiff's initial housing review form indicating his security level and work/privilege group. DSUF at 17. After conducting the initial housing review, defendant Hagerman had no other contact with plaintiff on that day. DSUF at 18. Pursuant to his job duties, defendant Hagerman sent a list of incoming inmates to the sergeant on Facility C who then assigned plaintiff to Facility D, Building 19, Bed 108U. DSUF at 19. According to defendant Hagerman, plaintiff arrived at Facility D, Building 19 at approximately 4:00 p.m. on May 21, 2019. DSUF at 20. According to plaintiff, the SOMS computer system indicates that plaintiff "was moved from R&R intake to bunk 19-108U by Sgt. Hagerman at approximately 1127 hours" on May 21, 2019. ECF No. 57-3 at 61 (Third Level Appeal Decision, at 4). Plaintiff's evidence further indicates that there were 18 available beds in Facility C on May 21, 2019. ECF No. 57-3 at 108. The parties agree that at approximately 8:00 p.m. on that day, plaintiff was transferred back to Facility C where he had been housed before going out to court on May 14, 2019. DSUF at 21.

Plaintiff did not miss any work shifts as a building porter or lose his work assignment because of the four hours he spent on Facility D. DSUF at 22. Plaintiff continuously held his job as a porter until his transfer to another CDCR institution on April 13, 2020. DSUF at 22. Plaintiff argues that had it not been for the actions of Sergeant Heimer in Facility D, he would have been unassigned from his job as porter. ECF No. 58 at 5.

/////

/////

## VI. Legal Standards

### A. Summary Judgment Standards Under Rule 56

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials…." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a

material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

### B. First Amendment Retaliation

Prison officials generally cannot retaliate against inmates for exercising First Amendment rights. Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985). Because a prisoner's First Amendment rights are necessarily curtailed, however, a successful retaliation claim requires a finding that "the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Id. at 532. The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). Also, in order to state a claim for retaliation, plaintiff must point to facts indicating a causal connection between the adverse action and the protected conduct. Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012).

/////

## VII. Analysis

The undersigned finds that defendants have met their initial burden of informing the court of the basis for their motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to plaintiff to establish the existence of a genuine issue of material fact with respect to his retaliation claims. See Matsushita Elec. Indus., 475 U.S. at 586 (1986). Based on the claims raised in plaintiff's first amended complaint, the court looks to whether a genuine dispute of fact exists concerning whether defendants' actions, viewed in the light most favorable to plaintiff, were made in retaliation for his protected activity.

In this case, the removal and destruction of plaintiff's property appears to have reasonably advanced a legitimate correctional goal since it occurred after he was transferred out to court. See Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) ("[A] successful retaliation claim requires a finding that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not narrowly tailored enough to achieve such goals.") (citations omitted). Plaintiff bears the burden of proving the absence of legitimate correctional goals for defendant's challenged conduct. See Pratt, 65 F.3d at 806 (citing Rizzo, 778 F.2d at 532). Defendant Wagner has submitted undisputed evidence that the removal of plaintiff's property was motivated by a legitimate correctional goal. Indeed, cell searches advance legitimate penological goals because they are "essential to effective security of penal institutions." Hudson v. Palmer, 468 U.S. 517, 528 (1984). Plaintiff is unable to demonstrate that defendant Wagner's challenged conduct was "unnecessary to the maintenance of order in the institution," which he must establish in order to prevail. Watison v. Carter, 668 F.3d 1108, 1114–15 (9th Cir. 2012). Therefore, defendant Wagner is entitled to summary judgment.

The court has reviewed plaintiff's verified complaint and his opposition to defendants' pending motion. Drawing all reasonable inferences from the evidence submitted in plaintiff's favor, the court concludes that plaintiff has not submitted sufficient evidence at the summary judgment stage to create a genuine issue of material fact with respect to his claim that defendant Hagerman retaliated against him in violation of the First Amendment. Plaintiff has not come

9

forward with any evidence upon which a rational juror could conclude that defendant Hagerman made the decision to transfer plaintiff to Facility D.[2] Defendant Hagerman's sworn declaration to the contrary is undisputed. Put simply, there is no genuine issue of material dispute that defendant Hagerman engaged in any adverse action. Therefore, defendant Hagerman is also entitled to summary judgment.

### VIII. Plain Language Summary for Pro Se Party

Because you are acting as your own attorney in this case, the court wants to make sure that you understand this order. The following information is meant to explain this order in plain English and is not intended as legal advice.

The court has reviewed the pending motions for summary judgment, as well as the evidence submitted by the parties, and has concluded that the facts of your case are not sufficiently in dispute to warrant a trial. You have fourteen days to explain to the court why this is not the correct outcome in your case. If you choose to do this you should label your explanation as "Objections to Magistrate Judge's Findings and Recommendations."

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for leave to file a third amended complaint (ECF No. 50) is denied for the reasons explained herein.
2. Plaintiff's motion to reopen discovery (ECF No. 52) is denied.
3. Plaintiff's motion for an extension of time to file a dispositive motion (ECF No. 53) is denied as moot.

IT IS FURTHER RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 56) be granted.
2. Plaintiff's cross-motion for summary judgment (ECF No. 57) be denied.

/////

---

[2] The court has reviewed plaintiff's Statement of Undisputed Facts filed in support of his motion for summary judgment. ECF No. 57-2. However, it largely contains irrelevant information pertaining to state law claims or defendants that were screened out of the present action. See ECF Nos. 15, 26, 44, 54. It is also replete with argument rather than facts about the interpretation of various CDCR regulations. Any disagreement between the parties concerning the proper scope of CDCR regulations is not relevant in establishing a First Amendment retaliation claim.

3. The Clerk of Court be directed to enter judgment for defendants Wagner and Hagerman and to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: May 12, 2022

/s/ Carolyn K. Delaney
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

12/witk0267.crossmsj.CJRA.docx